**In the Matter of SUNSET PLAZA, INC., Bankrupt.**

**PARSONS CORP., Appellant,**

v.

**David DAVIES and W. C. Nelson, Jr., Appellees.**

No. 76–1275.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1976.

Decided Dec. 3, 1976.

Law Offices of Malcolm Young, Omaha, Neb., for appellant.

W. C. Nelson, Jr., and Martin A. Cannon, Omaha, Neb., for appellee; Martin A. Cannon, Matthews, Kelley, Cannon & Carpenter, Omaha, Neb., on brief.

W. C. Nelson, Jr., Nelson, Eggers & Hahn, Omaha, Neb., on brief of intervenor-appellee, W. C. Nelson, Jr.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

PER CURIAM.

In 1966 the bankrupt, Sunset Plaza, Inc., contracted with Parsons Corp., a general contractor, to build a shopping center in Norfolk, Nebraska. Upon completion, Sunset Plaza, unable to pay the contractors and subcontractors, filed on May 15, 1969, a voluntary petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 *et seq.* The reorganization proceedings were soon aborted and on December 9, 1969, Sunset Plaza was adjudicated a bankrupt. The trustee for the reorganization was appointed as the bankruptcy trustee and was authorized to operate the shopping center until it could be sold.

To facilitate the sale of the shopping center Parsons and the other secured creditors entered into a stipulation with the trustee. Under the stipulation the secured creditors released their claims and accepted the stipulated payment terms as full satisfaction. This stipulation was approved by the bankruptcy referee on April 27, 1971.

The stipulation provided that the shopping center's accounts receivable were to be assigned to Parsons. As to the sale proceeds the parties agreed that administrative expenses were to be given first priority. Second priority was given to certain claims totaling $461,719.97, including a Parsons claim of $35,000. The agreement thereafter provided that all cash remaining after these payments was to remain in the custody of the trustee until the bankruptcy court determined the relative rights of Parsons and the unsecured creditors. It was later determined that Parsons had a secured claim in the amount of $257,502. After certain cash payments and the assignment of receivables, a balance of $157,963 remained to be paid out of the residual funds.

It later developed that if the trustee sold the shopping center as agreed, there would have been insufficient funds available to pay the administrative expenses and the claims set forth in the stipulation. Accordingly, the trustee applied to the referee for an order construing the April 27, 1971, stipulation to allow the trustee to pay only 85 per cent of the claims listed in paragraph 15(b). Parsons filed an objection to this application, asserting that such a construction would substantially change the terms and conditions of the stipulation. On July 26, 1971, after a hearing the referee approved the trustee's application, extended the closing date to August 1, 1971, and directed the trustee to pay only 85 per cent of the claims listed in paragraph 15(b). *Parsons did not appeal this decision,* but instead applied for the 85 per cent payment of its $35,000 claim. This application was approved and Parsons received a payment of $29,750 from the trustee.

On February 13, 1975, Parsons filed with the bankruptcy court a motion requesting that the secured creditors and the lienholders be given priority over the administrative expenses. Parsons was apparently concerned that the residual funds would be insufficient to pay the balance of its claim ($157,963). In support of this motion Parsons asserted that the referee's July 26, 1971, order extending the closing date to August 1, 1971, and directing the trustee to pay only 85 per cent of the claims material-

ly modified the April 27, 1971, stipulation and thus rendered it void. The bankruptcy court denied this motion, holding that the July 26, 1971, order did not materially modify the stipulation. The district court affirmed holding that the order did not materially alter the stipulation and, additionally, that Parsons acquiesced in the July 26, 1971, order by accepting the benefits of the order and failing to appeal it.

We affirm the district court for the reasons set forth in its opinion. We further order the appeal dismissed as frivolous.[1] In view of this finding and pursuant to Rule 38 of the Federal Rules of Appellate Procedure we assess attorney fees against Parsons Corp. in the sum of $500 to be equally divided between appellee's counsel, Martin A. Cannon, and W. C. Nelson, counsel for appellee-intervenor.

---

1. The district court in denying relief to the appellant in January, 1976, referred to this case as a "tortured appeal." It is indeed unfortunate that this ordinary bankruptcy proceeding has been prolonged by seven years of seemingly endless litigation without affording relief to many of the parties. The record discloses nonsensical whipsaw appeals back and forth and back again between the bankruptcy court and the district court. Counsel for Parsons, now, apparently at the end of the road, seek to reopen a referee's ruling made over five years ago. Primarily due to these tactics, it now appears that administrative expense and fees will deplete the residual funds and thus there exists little likelihood that many of the creditors will receive even partial reimbursement. Although counsel are entitled to be contentious in an adversary setting, this does not allow them to turn the administration of justice into a game of prolix pleadings (over 700 filings), endless and irrelevant examination and frivolous appeals. It is of great concern to this court that such tactics can wastefully occupy the time of the bankruptcy and federal district courts. Counsel who pursue the practice of law in this fashion discredit their profession and provide disservice to their clients.